## A96A1604. FOWLER v. OVERBY.
### (478 SE2d 919)

JOHNSON, Judge.

Mary Overby expressed an interest in buying a six-acre parcel of land from Aubrey Fowler. After inspecting only the front one-third of the property, Overby decided to purchase it. At closing, Fowler executed an affidavit in which he made several attestations as to the condition of the property, the one relevant to this litigation being that to his knowledge no portion of the property had ever been used as a landfill or as a dump to receive garbage, refuse, or waste.

After occupying the land for five months, Overby sought to rescind the contract claiming that Fowler fraudulently induced her to purchase the property. She contended that the property was covered with debris and had been used as a dump, and that Fowler failed to reveal this fact to her. Overby contended that she relied upon, to her detriment, Fowler's statement in the affidavit that the land had not been used as a dump. In his defense, Fowler argued that while the land was in his possession, it was not used as a dump and, furthermore, Overby did not justifiably rely on his affidavit. Fowler appeals from the jury verdict awarding Overby damages and setting aside the deeds transferred in the transaction, and from the denial of his motion for judgment n.o.v.

To maintain an action in fraud, a claimant must prove: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages. *Hanlon v. Thornton*, 218 Ga. App. 500, 501 (1) (462 SE2d 154) (1995). The plaintiff must present some evidence as to each of the five elements to survive a motion for j.n.o.v. Id. See generally *Famiglietti v. Brevard Medical Investors, Ltd.*, 197 Ga. App. 164, 166 (397 SE2d 720) (1990).

1. Fowler claims that the trial court erred in denying his motion for j.n.o.v. because Overby failed to show justifiable reliance upon the owner's affidavit. We agree and reverse.

"The law in Georgia is well-settled that in the purchase and sale of real estate there is an underlying principle of law . . . that one can-

not be permitted to claim that he has been deceived by false representations about which he could have learned the truth of the matter and could have avoided damage. . . . When the means of knowledge are at hand and equally available to both parties . . . if the purchaser does not avail himself of these means he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller." (Citations and punctuation omitted.) *Hanlon*, supra at 501-502 (1). "In order to prove the element of justifiable reliance, the plaintiff must show that [she] exercised [her] duty of due diligence." Id. at 501 (1). "While questions of due diligence often must be resolved by the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law." (Citations and punctuation omitted.) *Jung v. Cheoun*, 216 Ga. App. 490, 492 (455 SE2d 310) (1995). See *Hardage v. Lewis*, 199 Ga. App. 632, 633 (405 SE2d 732) (1991).

We note at the outset that it is questionable whether Overby actually relied upon the affidavit. She testified that she went to the closing ready to close the deal and that she had not seen the affidavit prior to the closing. When asked whether she would have completed the purchase had the affidavit not been presented, she responded: "Most likely, yes." However, Overby also stated that she would not have closed the deal if Fowler had refused to sign the document. Viewing the evidence most favorably to Overby, and assuming she did rely upon the affidavit, it is nonetheless clear that her reliance was not justified.

The truthfulness of Fowler's statement that the property had not been used as a landfill or as a dump to receive garbage, refuse, or waste, could have been discovered through the exercise of the slightest degree of diligence by Overby before she purchased the property. The record shows that Overby drove by the property one time and that she "believe[s]" that she actually walked on the property once before she bought it. Overby testified that she went onto the front area of the property and saw trash on the front one-third of the property, but that she did not know what was on the back two-thirds because she did not want to walk through it. She testified that the weeds were knee-high and that she was "just not dressed usually to go walking in that kind of thing." Overby added that there was a "mound" covered with magazines, dead plants and "just a lot of trash." She made no further inspection of the property before closing. Nor did she ask Fowler any questions about trash on the property before she bought it. She testified that after the purchase she inspected the back part of the lot and saw a car frame, pots, and other debris. Overby added that when she cleaned up the property, the surface debris filled three 20-cubic foot dumpsters.

Darryl Floyd, her employee, testified that he walked what he

believed was the entire property and saw "a lot of trash," including plastic pots, irrigation pipe, plastic sheets, and at least one old car frame. A witness from the Macon-Bibb County Emergency Management Agency testified that about six to eight containers marked "radio activity" were found lying on the creek bank at the rear of the property. The record further indicates that Daniel Rothwell, a Bibb County employee, could see trash on the property from a nearby bridge. Rothwell added that most of the car frame was aboveground and not covered with weeds, and that it appeared that building materials had been dumped in the back of the property. The debris lay on the surface and Rothwell did not have to do any digging to uncover it.

Despite the fact that Overby saw trash on the property, she made no effort to inspect two-thirds of the property before she purchased it. As she and the other witnesses testified, trash was visible to everyone who walked around the property. There was no evidence that Overby was prevented from inspecting the property before purchasing it. Thus, any damage Overby may have suffered due to the condition of the property must be charged to her own lack of diligence and not to her reliance upon any misrepresentation by Fowler. See *Hardage*, supra at 634. See also *Tingle v. Seignious*, 212 Ga. 71 (90 SE2d 408) (1955), where the Georgia Supreme Court sustained a general demurrer of a petition seeking rescission of a real estate sale based on fraud where nothing prevented the purchaser from investigating statements made by the seller concerning the property's value and character; and see *Crawford v. Williams*, 258 Ga. 806, 808 (375 SE2d 223) (1989), where the court held that "[a] party buying real property who makes no attempt to discover the boundaries of the property cannot be said to have 'justifiably relied' on a misrepresentation by the seller regarding those boundaries."

Overby claims that some of the debris was buried and she could not have been expected to see it upon inspecting the property. Assuming some trash was covered, she was certainly put on notice of the possibility by the presence of surface debris. Due diligence in such a case would require a closer inspection than she made of the property. See *Delk v. Tom Peterson Realtors*, 220 Ga. App. 576 (469 SE2d 741) (1996). Moreover, we find no evidence that any trash was buried, and none of Overby's cites to the transcript indicate that anything was buried. In fact, the witnesses whose testimony Overby references do not say that they did any digging to uncover the trash, just that kudzu covered some of it, but they could still see it. And though Fowler testified that he "pushed down" and "leveled out" an old restaurant foundation on the property, he did not say that it was buried. Indeed, he stated that one of the walls is still in place. He also stated that the foundation was made of concrete block or "jumbo" brick, and

another witness testified that he saw cinder-block type brick on the property. Due diligence would have revealed the debris described at trial.

Overby points to, and we are aware of, no authority holding that where a representation as to the condition of property is made in an affidavit rather than verbally, a buyer has no duty to use due diligence to determine if the representation is true. "[I]n the sale of land, the purchaser contracts with [her] eyes open; and, if [she] is not in some way deprived of the opportunity of inspecting the land for [herself] by the fraudulent acts or conduct of the vendor, [she] will not be heard to complain. As to such things as quality and condition which are open to inspection, [she] is wilfully negligent if [she] fails to look and see for [herself], and [she] cannot be heard, either in law or equity, to complain of the conduct of the seller, the effects of which could have been averted by slight diligence on [her] part. [Cits.]" *Hays v. McGinness*, 208 Ga. 547, 550 (67 SE2d 720) (1951).

A motion for j.n.o.v. may be granted when, viewing the evidence in the light most favorable to the verdict, there can be but one reasonable conclusion as to the proper judgment. *Famiglietti* at 164. There being no evidence of justifiable reliance on Fowler's affidavit, the trial court erred in not granting Fowler's motion for j.n.o.v.

2. Because the trial court erred in not granting Fowler's motion for j.n.o.v., we need not address his remaining enumerations of error.

*Judgment reversed. Beasley, C. J., Birdsong, P. J., Andrews, Smith and Ruffin, JJ., concur. McMurray, P. J., Pope, P. J., and Blackburn, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

"Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. . . . The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for . . . j.n.o.v. will not be disturbed." (Citations and punctuation omitted.) *Willis v. Brassell*, 220 Ga. App. 348 (469 SE2d 733). While I must readily acknowledge that plaintiff presented a weak case in several respects, I do not agree with the conclusion of the majority that there was a complete failure of proof such as would warrant reversal. As I would uphold the verdict of the jury, I respectfully dissent.

Both plaintiff and her husband conducted some inspection of the premises. While these inspections were limited in scope, the parame-

ters were determined by the nature of the property. The land was covered by a thick and impassable undergrowth. Those who testified as to actually traversing the land testified as to their difficulty in doing so and as to the nature of the work which would be necessary to clear the land for reasonable access. The jury may have concluded that plaintiff exercised due diligence under the circumstances.

Also, the jury could have reasonably determined that even a higher degree of diligence on the part of plaintiff would have been unlikely to have disclosed the presence of the landfill on the property. See *Hanlon v. Thornton*, 218 Ga. App. 500, 503 (462 SE2d 154). That landfill consisted of a "wash" which had been filled in with debris and the site was obscured by the undergrowth. Contrary to the majority opinion, I do not view the surface debris as providing any notice of the landfill and consequently maintain that there was no heightened duty on the part of plaintiff to search for such a defect. Whether the plaintiff was required to walk every foot of the property in order to satisfy the due diligence requirement was a question for the jury. Similarly, the question of whether the inspection actually conducted by plaintiff was sufficient is also a jury matter and should not be overturned on appeal under the circumstances of this case.

I am authorized to state that Presiding Judge Pope and Judge Blackburn join in this dissent.

DECIDED DECEMBER 4, 1996.

*Jones, Cork & Miller, Thomas C. James III*, for appellant.
*Adams & Hemingway, Ward Stone, Jr.*, for appellee.

