24377.   BONNER v. COTTON.

844

ARGUED NOVEMBER 15, 1967—DECIDED JANUARY 4, 1968.

*McCurdy, Candler & Harris, J. Robin Harris, Claude E. Hambrick,* for appellant.

*Wall, Armstrong & Fuller, Ronald Armstrong, Al Wall,* for appellee.

GRICE, Justice. Whether the evidence authorized the verdict for reformation of a deed is the issue in this appeal, which is from denial of motions for judgment notwithstanding the verdict and for new trial. This issue arises from a petition filed in the Superior Court of DeKalb County by the purchaser of a tract of land, Mrs. Maedel G. Cotton, against the seller, T. L. Bonner.

The purchaser alleged that the seller's brother, who was his agent, fraudulently represented to her and her husband the boundaries of the tract in question prior to the sale and that the description in the sales contract and the subsequent deed omitted a portion of the tract which he had represented was included and which she believed she was buying.

These and other material allegations were denied by the seller.

At the trial the evidence was conflicting as to the fraudulent representations as well as to the agency, but the jury resolved them in the purchaser's favor.

Upon this appeal the seller urges all the contentions made in his motions for judgment notwithstanding such verdict and for new trial. These contentions are based upon the alleged lack of evidence on matters essential to recovery.

The controversy is over the western boundary of the property. There is no conflict as to the amount of frontage agreed upon. Both sides agree that it was 390 feet. The disagreement is as to the location of the 390 feet.

The evidence was that the seller's brother showed the property, located on Glenwood Road, to the purchaser and her husband. They were not familiar with the property, and the seller's brother pointed out to them the boundaries of the property to be sold.

The seller's brother testified that in pointing out the boun-

daries he fixed the starting point on the eastern side of the property at the intersection of Glenwood Road and an unopened street shown on a preliminary plat, and told them that the boundary would run west 390 feet to another unopened street shown on the plat. He testified that he told them the property to be sold would not include all of the driveway, and that he did not recall telling them the buildings and improvements would be included. He gave them a preliminary plat of this and adjoining property which showed proposed streets intersecting Glenwood Road and a proposed subdivision of a portion of the property.

The purchaser and her husband testified that in pointing out the boundaries the seller's brother began on the western side of the property, that he pointed out to them an iron pin, approximately 30 feet west of the driveway leading to the house on the property and stated that this pin was the southwestern corner of the property to be conveyed, and that from this iron pin the seller's brother walked easterly along Glenwood Road a distance which he stated was 390 feet and told them that this was the frontage of the property to be sold. They further testified that he represented to them that the driveway to the house and the various buildings and improvements were included within the boundaries.

Both the purchaser and her husband swore that they relied upon and trusted the representations of the seller's brother as to the boundaries. The purchaser testified that neither of the unopened streets shown on the plat was graded, and that it was impossible to ascertain where they were to intersect Glenwood Road. Her husband testified that there was no means by which they could check the description in the deed against the plat given them because the proposed streets shown on it did not exist at that time, and no marker was there.

Several days after the purchaser, her husband, and the seller's brother inspected the property, a sales contract was executed by the seller, naming the husband as the purchaser. Thereupon, the purchaser and her family, with the consent of the seller's brother, entered into possession of the property.

Some three months later the sale was closed with delivery of the deed to the wife as purchaser. Its description was essentially

the same as that in the sales contract, not mentioning the iron pin but describing the property as beginning at the intersection of the north side of Glenwood Road and the western side of the unopened Meadowglades Drive, and reciting "thence running West 390 feet to a point; thence running Northerly and Northeasterly 530 feet to a point. . ."

About three years later, the purchaser was informed by someone from the State Highway Department that she did not own the portion now in issue, but that the seller did. She then obtained a survey which disclosed that the description in her deed did not follow the boundaries pointed out to her, did not include some of the land she thought she was buying, and did not embrace a portion of the driveway and buildings and improvements referred to above.

■ Equity may in a proper case reform a written contract for the sale of land where there is mistake on one side and fraud on the other. *Reese v. Wyman,* 9 Ga. 430; *Gibson v. Alford,* 161 Ga. 672 (2) (132 SE 442); *Helton v. Shellnut,* 186 Ga. 185 (1) (197 SE 287).

Unquestionably there was evidence here from which the jury could find mistake on the part of the purchaser—that she thought the boundaries of the property she was buying extended to the iron pin and included all of the driveway and buildings, and that the description in the deed did not speak the truth of the agreement. *Code* § 37-202; 18 West's Ga. Dig., Reformation of Instruments, § 17.

Also, while in conflict, the evidence was ample to support a finding of fraud on the part of the seller's brother in misrepresenting the boundaries to the purchaser. "Misrepresentation of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud." *Code* § 37-703. See also, *Gibson v. Alford,* 161 Ga. 672 (2), 682-683, supra.

■ However, the seller contends that the evidence demanded a finding that the purchaser did not exercise the required degree of diligence, and that for this reason she is not entitled to relief in equity.

In this regard, *Code* § 37-211 provides that "If a party, by reasonable diligence, could have had knowledge of the truth, equity shall not relieve . . ." and *Code* § 37-212 recites that "The negligence of the complaining party, preventing relief in equity, is want of reasonable prudence, the absence of which would be a violation of legal duty. . ."

What we regard as significant in this respect is that the representations relate to the boundaries of the property in dispute. This court has, on several occasions, recognized this feature as decisive. We refer to some of them.

In *Folsom v. Howell*, 94 Ga. 112 (2) (21 SE 136), this court upheld a purchaser's suit for reformation of a deed given by administrators. It said: "If administrators in selling land as the property of their intestate represented the boundaries thereof as extending along certain lines from point to point, giving the length of each line, and thus misrepresented the extent and contents of the tract . . . the purchaser was defrauded . . . whether the administrators knew their representations were false or not, provided the representations were accepted and treated by the purchaser as true and he acted and relied upon them in making his purchase. . . While the doctrine of *caveat emptor* would charge the purchaser with looking out for the title which the decedent had to the tract offered for sale as his, it would not charge him with looking out for the boundaries of that tract when the administrators undertook to locate and point them out, thus professing to know them sufficiently to enable them to furnish this information to purchasers instead of leaving the latter to their own resources in acquiring the information." (Headnote 2.)

In *Gibson v. Alford*, 161 Ga. 672, supra, the purchaser, when sued by the seller for breach of the sales contract, sought reformation of the contract. This court declared: "Where a vendor agrees to sell a designated tract of land to another and points out to the latter its boundaries . . . and where such boundaries include lands to which the vendor has no title, in consequence of which the purchaser loses the same, the purchaser . . . can set off at law the value of the portion of the land so lost, against the purchase money . . . whether the rep-

resentations were designedly made by the vendor to deceive the purchaser, or were innocently made. . . (d) But this right will not prevent the purchaser from having the instrument reformed, if he wishes to assert his full rights under the contract when reformed." (Headnote 2c, d.)

In *McDonald v. Mullins*, 197 Ga. 511 (29 SE2d 507), this court reaffirmed the rule stated in the *Gibson* case, supra, and overruled the general demurrer to the petition for reformation, which alleged in substance: "that . . . at the time of the purchase the defendant and her agent, the auctioneer, pointed out a concrete wall and a fence as representing the southern and northern boundaries of the property respectively; . . . that the plaintiff relied upon the representation of the defendant and her agent as to the location of the northern line of the property; that the line represented by the fence on the north was agreed upon as the line at the time of the purchase; that the defendant now claims a portion of the property on the northern side of said tract . . .; that until recently the plaintiff did not know that her deed did not include all the property as far north as the fence pointed out by the defendant at the time of the sale as being the northern boundary line."

For other cases recognizing and applying the rule as to representations concerning boundaries, see *James v. Elliott*, 44 Ga. 237; *Brannen v. Brannen*, 135 Ga. 590 (69 SE 1079); *Fite v. Walker*, 183 Ga. 46, 49-50 (187 SE 95); 23 AmJur 980, Fraud and Deceit, § 168; 37 CJS 308, Fraud, § 52.

This court has distinguished misrepresentations as to boundaries from those as to title, contents of the deed, and quality, value or condition of the land, insofar as concerns reliance upon them when equitable relief is sought. See *Folsom v. Howell*, 94 Ga. 112, supra; *McDonald v. Mullins*, 197 Ga. 511, supra; *Edge v. Winters*, 208 Ga. 196 (66 SE2d 57); *Hays v. McGinness*, 208 Ga. 547 (67 SE2d 720).

Under the foregoing authorities, the evidence fully supports the finding by the jury that the purchaser here exercised reasonable diligence. Certainly it did not demand a finding to the contrary.

■ The remaining question is whether the jury was autho-

rized to find that the seller's brother was his agent, so as to impute to him the representations as to the boundary. We regard the evidence as sufficient in this respect. While the seller and his brother denied such agency, the evidence showed that the seller made it known to the brother that he would sell the property for $35,000, executed a contract obtained by the brother whereby the seller agreed to sell it to the purchaser's husband for that price, accepted the down payment procured by the brother, later executed the deed to the purchaser, and received the balance of the purchase price. Our *Code*, § 4-101, provides that agency arises "wherever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf."

In view of the evidence touching the issues, the trial court properly denied the seller's motions for judgment notwithstanding the verdict and for new trial.

*Judgment affirmed. All the Justices concur.*